———————o———————

5547.

(Court of Appeal, Parish of Orleans.)

## MRS. ALICE McGLOUGHRY, DIVORCED WIFE OF JAMES G. POSEY, vs. WIDOW JULIAN B. HABANS, ET AL. ...

1. One who stands in a fiduciary capacity towards another owes to that other an accounting of his trust.
2. In an accounting by a fiduciary to his principals, it will not suffice to show that there were debts due by said principals which he was to pay for their account, but he must show affirmatively that such debts have in fact been paid by him.
3. Any neglect on the part of the creditor to demand his debt, or lapse of such debt by prescription, inures to the benefit of the principal by whom said debt was due and not to that of the fiduciary who in such event must restore to his principal the funds left in his hands for the purpose of paying the same.
4. The widow and heirs of a deceased notary who have accepted his succession unconditionally are liable for funds deposited with

him in his official capacity and not accounted for at the time of his death.

5. The surety on the official bond of a notary undertakes no other obligation than the faithful performance of his official duties by the principal on the bond, and cannot be held liable for funds deposited in the hands of the latter unless such funds be lost through some breach of that official duty.

6. There is no Statute in this State which requires a notary to keep a bank account in his official capacity and deposit therein all funds received by him as notary.

7. Where a deceased notary had received funds in his official capacity, and at the time of his death had cash, in bank to his credit, largely in excess thereof, the presumption is that the funds received by him formed part of such deposit; and accordingly there is no ground for holding that funds received in his official capacity have been misappropriated by him, so as to render his surety liable therefor.

8. Hence, where the widow and heirs of such deceased notary, although in good faith and ignorant that part of said cash belonged to his client and not to himself, have accepted his succession and been put in possession thereof, they, the widow and heirs of said notary, and not the surety on his official bond are liable for the return of the funds so taken possession of by them.

Appeal from the Civil District Court "Division "A."

W. A. Bahns, for plaintiff and appellant.

Milner & Humphreys, for defendant and appellee.

ST. PAUL, J.—This is an action against the widow and heirs of a deceased notary and the surety on his official bond to recover one half of the sum of $1365.21 received by said notary for the purpose of effecting a partition between plaintiff and her divorced husband.

The defendant surety pleads the general issue and sets up as a special defense that at the time of his death

(about two years before the filing of this suit) said notary, Julian B. Habans, ''had deposits in bank and other assets largely in excess of the claim of plaintiff, and that plaintiff with full knowledge of this fact, took no steps to collect this money from Habans, and allowed respondents co-defendants to take possession of this money and be put in possession of his estate.''

The co-defendants, to-wit: the widow and heirs of said Habans, set up a separate defense in effect as follows: That by consent of the attorneys in said divorce and partition proceedings, to-wit, Robert J. Maloney, attorney for this plaintiff and J. O. Daspit, attorney for her divorced husband, said Habans made a distribution of the funds in his possession as Notary, and did pay over to the said Robert J. Maloney the full amount coming to said plaintiff; and that plaintiff received from said Maloney the full amount due her therein.

The evidence shows that on the day he first received the money, the notary, Habans, paid to the attorneys, Maloney and Daspit each the sum of $432.60, thus retaining in his hands a balance of $500.00, which he held, as shown, for the purpose of paying some debts and charges, stated to be in excess of $300.00.

The evidence and surrounding circumstances leave not a shadow of doubt on our minds that Maloney was fully authorized to receive this money for account of this plaintiff, and that she knew full well that he had received it, and the evidence impresses us with the belief that Maloney has paid her the greater part if not the whole of the amount thus received.

But be this last as it may, Maloney was authorized to receive the money and did so. That sufficed to discharge the notary, and plaintiff must now look to Maloney and not to Habans or his successors for an account-

ing thereof. That she herself was well aware that Maloney had authority to receive the money and was the one to account to her, is shown by her own testimony, wherein she admits that she constantly drew money from Maloney (who had no other source from which to get it for her) and sought repeatedly, though unsuccessfully, to get from him an accounting. On the other hand she at no time called on Habans himself for such accounting.

So far therefore as relates to the sum of $432.60, which is shown to have actually been received by Maloney this case is without merit.

But as to the balance of $500.00, retained by the notary, in which plaintiff had an interest of $250.00, the situation is very different. Habans as notary in the partition, stood in a fiduciary capacity toward the parties thereto and owed them an accounting of his trust. Nor would it suffice in such accounting to show that there were debts due by them which he was to pay for their account; but it must be shown affirmatively that such debts have actually been paid by him.

Thus if I make a deposit with a banker to pay my note, and it is never presented and in due course becomes prescribed, it is clear that when I demand of the banker the return of my deposit, it will not suffice for him to answer me that I am not entitled to it as the note has been discharged as fully as if it had been paid. For this money has never ceased to be mine.

Hence any neglect on the part of the creditor to demand his debt, or lapse of said debt by prescription, inures to the benefit of the principal by whom said debt was due and not to that of the fiduciary who in such event must restore to his principal the funds left in his hands for the purpose of paying the same.

And therefore, without disparaging the fair name of

the deceased who, as is well known, was striken suddenly in the midst of an active career, we find that this balance of $500.00 has not been accounted for.

The District Judge himself was apparently not throughly satisfied on that score since he only non-suited the plaintiff instead of rejecting her demand absolutely. and in his written reasons for judgment (after observing the deficiency in the evidence( he says in part:

. "Habans and Daspit are dead; Maloney's testimony taken in the State prison, is in the record. I think the defendants have, though sadly handicapped, successfully borne the burden of proof against plaintiff's claims, at least to the extent of non-suiting her. I have decreed the non-suit because the parties, plaintiff and her divorced husband, may be able to show that settlement of their matrimonial affairs would leave some residum for division. At any event, the plaintiff intended that the marriage debts and all costs shall be paid, and might have the right of action to proceed upon joinder of all having interests as creditors or otherwise in the settlement."

It is true that Habans and Daspit are dead, and Maloney is incarcerated in the State prison; but receipts might have been produced or the creditors themselves have been asked as to the payments of their claims. If the debts were paid Haban's check books and returned checks should have shown it. But neither check nor check book, nor receipt nor creditor was produced. Even Maloney does not testify that they were paid. There is therefore no evidence whatever that any of these debts were ever paid, but on the contrary some of them were disputed and were being pressed after Haban's death.

And that defendants themselves do not seriously be-

— 229 —

lieve that these debts were ever paid by Habans himself, is shown by their effort to prove that one half of the deposit $285.00, was paid to Maloney.

But this endeavor to show that the money was turned over to Maloney falls short of that degree of proof required to show payment. Maloney does not admit that the balance was paid over to him. All he says is that Habans owed nothing to plaintiff or to himself. On the contrary his testimony and his course of conduct, alike show, or were intended to show, that there was some balance still remaining in the hands of Habans at the time of his death. For it is shown that after the death of Habans, he (Maloney) as attorney for this plaintiff procured the appointment of a new notary for the alleged purpose of completing the partition, and in his testimony he says that "if it should have transpired that anything would have been coming to her in the partition, it would be paid to me (Maloney) and I would credit it on the amounts which I had advanced to her."

It is true that a check is produced drawn by Habans to the order of Maloney for $250.00; but there is nothing to identify that check with this particular transaction, and Habans had other business relations with Maloney besides the one out of which this controversy grows. So that this check proves nothing.

That Maloney took no steps to protect plaintiff's interests in the Succession of Habans; that after the appointment of a new notary, Maloney proceeded not even to the extent of notifying him of his appointment; that Maloney though neither declaring the debts paid nor admitting the receipt of any balance from Habans, yet visibly seeks to impress upon the Court that Habans owed nothing either to plaintiff or himself, and that in turn he himself owed nothing to plaintiff; are all cir-

— 230 —

cumstances pregnant with possibilities, but to attempt to pursue them to any conclusion would be to leave the domain of evidence and enter into the realms of speculation.

There is therefore in our opinion, no legal evidence that the balance of $500.00 in the hands of Habans has ever been accounted for, and hence his widow and heirs, who have accepted his succession unconditionally, are legally accountable therefor in proportion to their respective interests in his succession.

But as to the surety on his official bond as notary, we have reached a different conclusion. Such a surety undertakes no other obligation that the faithful perfor-mance of his official duty by the principal on the bond: thus the surety cannot be held liable for funds deposited in the hands of the principal unless they be lost through some breach of that official duty.

Now the record in the Succession of Habans shows that at the time of his death he had cash, to his credit in bank, far in excess of the $500.00 still unaccounted for, to-wit, more than $1200.00, and other assets aggregating some $4000.00.

The presumption is that the $500.00 was part of the $1,200.00; so that apparently plaintiff's money was at that time safely in bank, and there is no ground for assuming that the deceased had misappropriated any part thereof. Without such misappropriation there was no breach of official duty for which the surety on his official bond might be liable.

It is true that the inventory fails to show whether this bank account of the deceased was kept in his official capacity or in his individual name. But that is immaterial since there is no statute in this State which requires a notary public to keep a bank account in his offi-

cial capacity and deposit therein all funds received by him as notary.

He might therefore, with equal propriety, so far as breaching any official duty was concerned, have deposited the funds when received by him, either in an official bank account, or for that matter have kept them in his bank box or even on his person. The material fact is that at his death he had the funds safely in his possession and had not misappropriated them, and therefore had been guilty of no breach of official duty for which his surety was then liable.

And surely if no liability existed as to his surety at the time of his death, none could arise thereafter; since no further breach of his official duty could then occur. At his death all persons having funds in his hands were creditors of his succession, having, it is true, the right to be paid in full out of the monies in his hands, or to look to his surety therefor; but if the funds were then on hand, and the parties interested therein stood by and permitted his heirs to take possession thereof, they have only themselves to blame and cannot look to the surety on his official bond, whose liability ceased when his official capacity was ended by his death; to this extent at least, that nothing occurring thereafter could give rise to any further liability not already incurred.

We therefore think that the widow and heirs of the deceased Notary are liable to plaintiff for the return of her funds taken possession of by them, in proportion to their respective interests in the estate, say for one half of $500.00 And it makes no difference whatever herein that they may have been ignorant of plaintiff's claim to the fund and have acted innocently in taking possession thereof, whether as to their own liability or the want of liability on the part of the surety.

We find however, that Mrs. Edwina N. Habans, wife of Luther E. Youngs, residing in the Parish of St. Charles, one of the six children of the deceased, excepted to the jurisdiction of the Court, **ratione personae**, and that her exception was maintained by the Court a qua, from which judgment no appeal was taken. No judgment can therefore be rendered against her herein.

As the surety, appellee herein, has asked for no amendment of the judgment of non-suit in its favor it cannot be disturbed.

It is therefore ordered that the judgment appealed from be affirmed in so far as it dismisses as in case of non-suit the demand of plaintiff against the Fidelity and Deposit Company of Maryland.

It is further ordered that in all other respects the judgment appealed from be reversed, and it is now ordered that plaintiff and appellant, Mrs. Alice Mc-Cloughry, divorced wife of James J. Posey, do have and recover judgment against the following named heirs of Julian B. Habans deceased for the following sums, to-wit; Against Mrs. Armentine Elizabeth Peyton, Widow of Julian B. Habans, for the sum of one hundred and twenty five dollars, ($125.00), and severally against the following named children of said deceased, to-wit: Mary Habans, wife of Vincent Ferrer, Amelia Habans, Paul E. Habans, Josie V. Habans, and Juliet Habans, each for the sum of twenty 83/100 ($20.83); all with legal interest from judicial demand until paid, and the defendants hereinabove cast to pay costs of both Courts in solido.

April 1, 1912.

Rehearing refused April 29, 1912.